## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **COFFEYVILLE RESOURCES**<br>**REFINING & MARKETING, et. al.,**    ) | |
| ) | |
| **Plaintiffs,**    ) | |
| ) | |
| **v.**    ) | **Case No. 08-1204-WEB** |
| ) | |
| **LIBERTY SURPLUS INSURANCE**<br>**CORPORATION, et al.,**    ) | |
| ) | |
| **Defendants.**    ) | |
| ————————————————————) | |

## MEMORANDUM AND ORDER

This matter is before the court on defendant National Union Fire Insurance Company of Pittsburgh's ("National") motion "to compel more complete production from plaintiff." (Doc. 193).  Specifically, National seeks to compel production of documents related to refinery operating procedures, emergency procedures, oily sewer waste, and incident investigations.  National also seeks an order requiring production of a privilege log for all documents withheld by plaintiff.  Plaintiff contends that it has no additional documents to disclose and that a privilege log is being prepared.  For the reasons set forth below, National's motion shall be GRANTED IN PART and DENIED IN PART.

## Background[1]

This is a breach of contract action by plaintiff against its insurers.  Highly summarized, plaintiff alleges that defendant insurers have wrongfully refused to provide insurance payments for damages caused by the accidental release of crude oil from plaintiff's Coffeyville refinery in the summer of 2007.  Plaintiff contends that rapidly rising flood waters of the Verdigris River caused an emergency shutdown of the refinery and the accidental release of 80,000 gallons of crude oil.

National's insurance policy contains an exclusion for pollution releases which are not "abrupt" in nature.  National contends that plaintiff's senior management had at least four hours notice that critical valves had not been closed and, had the valves been closed, the release of oil could/would have been avoided.  Because a number of hours passed before the "release" of oil into the flood waters, National seeks to discover materials and information concerning emergency shutdown and other operational procedures at the refinery in an effort to show that the oil release was not "abrupt."  National's motion to compel and the parties' arguments are discussed in greater detail below.

## National's Motion to Compel

As noted above, National moves to compel "more complete responses" to certain production requests.  Plaintiff opposes the motion, arguing that it has produced a large

---

[1]

The allegations are described in detail in a prior opinion and will not be repeated. Memorandum and Order, Doc. 221, filed March 24, 2009.

volume of documents and has advised National that it has no additional responsive documents.   Ordinarily, such a response would suggest that judiciary involvement is unnecessary.[2]  However, National points to deposition testimony from plaintiff's employees indicating that written procedures exist and National contends that those written procedures have not been produced.   Additionally, National argues that plaintiff's representations concerning document production are carefully worded and "plaintiff does not categorically deny the existence of specific shutdown procedures, or the existence of specific tank and pipeline operating procedures."  Doc. 214, p. 2.  The production requests and the parties' arguments are discussed in greater detail below.

**Production Request Nos. 9.**

Production Request No. 9 seeks:

> All documents relating to permits, operational practices, procedures and directives relating to tank and pipeline operations at the refinery which were in effect at any time between June 26, 2007 and July 10, 2007.

Plaintiff's initial response indicated that documents responsive to the request could be found

---

[2]

National argues that plaintiff's representation in its response brief is an "unsworn denial" and, even though signed by counsel, is inadequate.  National argues that only a sworn affidavit will suffice.

The court rejects National's assertion that only a signed affidavit denying the existence of documents satisfies a request for production.  Fed. R. Civ. P. 34 does not require the client to personally sign, under oath, the response to a production request.  In contrast, interrogatories are treated differently.  Fed. R. Civ. P. 33 requires that the "person who makes the answers [to interrogatories] must sign them, and the attorney who objects must sign any objections."

in Bates-stamped documents CR-17861 through CR-23084.[3]  When National challenged the

completeness of this response with references to deposition testimony by Mr. Ditmore and

Mr. Swanberg, plaintiff responded by stating:

> While some specific operational procedure manuals exist for
> particular operating units with the Refinery, there are no **over-arching**
> refinery operational procedure manuals.  Thus, there is no document
> which fits within your request. (emphasis added).

In response to National's motion to compel, plaintiff reiterates that **"there are no over-**

**arching Refinery operational procedure manuals."** Doc. 202, p. 2 (emphasis in original).

   The court agrees that plaintiff's response concerning "over-arching refinery

operational procedure manuals" is not sufficient.  Request No. 9 asks for **"*all*** documents

relating to ... operational practices, procedures and directives ... at the refinery."   Keith

Osborn, plaintiff's "corporate representative," testified that written procedures to "safely shut

down the **units**" exist.   Similarly, John Ditmore, plaintiff's "refinery environmental

manager," testified that, from his experience, there should be "written shut down procedures"

and that the procedures would address "a **unit's** shut down."  More importantly, plaintiff's

response concedes the existence of manuals for "particular operating **units**" but then attempts

to limit its response to "over-arching refinery" manuals.

---

[3]

   Plaintiff's initial response also included the following boilerplate objections:

> Objection; said request is vague, ambiguous, oppressive, overly
> broad and unduly burdensome.  Moreover, the requested material is
> irrelevant, immaterial and unlikely to lead to relevant information.

Plaintiff has not argued its boilerplate objections in opposition to National's motion;
therefore, the objections are deemed abandoned.

Accordingly, National's motion to compel a more complete response to Production Request No. 9 shall be GRANTED.  Plaintiff shall produce **all** procedural manuals and directives "related to tank and pipeline operations at the refinery" during the requested time period.

**Production Request No. 10.**

Production Request No. 10 requests:

> All documents relating to emergency practices, procedures and directives at the Refinery which were in effect at any time between June 26, 2007 and July 10, 2007.

Plaintiff asserts "there are no ***Refinery*** shutdown procedures other than the Facility Response Plan or the Integrated Contingency Procedure materials which have already been produced." Doc. 202, p. 3 (emphasis added).  National moves to compel, arguing that **all** requested documents have not been produced.  Again, National cites the deposition testimony of Mr. Osborn and Mr. Ditmore.

Similar to the above ruling concerning Production Request No. 9, the court is persuaded that plaintiff has qualified its response by referencing "**Refinery**" shut down procedures and ignored the issue of whether "**units**" of the refinery had "emergency practices, procedures and directives."   Therefore, National's motion to compel more complete production concerning Production Request No. 10 is GRANTED.  Plaintiff must produce **all** "documents related to emergency practices, procedures and directives at the

Refinery" during the requested time period.[4]

**Production Requests No. 15 (first set) and Nos. 1-4 (second set)**

Requests No. 15 and Nos. 1-4 seek documents related to the plaintiff's sewer system and oily releases into the refinery's sewer.  Apparently, plaintiff diverted 100 to 200 barrels of oily waste into its sewer system on a daily basis.[5]  Plaintiff argues that it has produced the documents and, again, National disputes the completeness of production.

National assumes that additional documents exist because Chris Swanberg, one of plaintiff's employees, estimated during his deposition that approximately 200 barrels of oily waste per day were released into the sewer system while other documents suggest that as much as 500 barrels of oily waste were placed in the sewer system.  National argues that the discrepancy must mean that additional documents exist.

The deposition testimony and exhibits cited by National are ambiguous at best and do not show that "additional documents must exist."  Accordingly, the court rejects National's argument that additional documents exist.

National also argues in its reply brief that plaintiff's "waste water discharge permit under the National Pollution Discharge Elimination System (NPDES)" is a source of information from which one might extrapolate the volume of waste oil released to the sewer

---

[4]

If, in fact, ***no*** additional documents exist, plaintiff shall simply say so in an affidavit without any qualifications or limitations.

[5]

The "sewer system" is part of a reclamation system within the refinery.

system and plaintiff has not produced this document.  However, the argument concerning the NPDES data and whether it provides information from which National might extrapolate the volume of oily waste was first raised in the reply brief.  The court declines to address a specific  document first described and argued in a reply brief.  Under the circumstances, the court denies National's motion to compel a more complete response to Production Request No. 15 and Nos.1-4.

**Production Request No. 18**

Request No. 18 seeks all documents relating to the investigation of the oil release and environmental contamination.  Plaintiff objected to production of the Becht Engineering report based on Fed. R. Civ. P. 26(b)(4)(B) but also produced documents numbered CR-17861 through CR-23084.[6]  National moves to compel a more complete response, arguing (1) there must be more documents and (2) plaintiff has not provided a sworn statement that no other responsive documents exist.

National's argument that there must be additional documents is simply not persuasive and rejected. Moreover, as noted above, the court is not persuaded that plaintiff is required to file a sworn affidavit denying the existence of additional documents.  Plaintiff has filed a brief, signed by counsel, stating that no additional documents exist.  Absent evidence to the contrary, the court accepts counsel's representation and signature as an officer of the court.

---

[6]

The Becht documents were the subject of a separate order.  <u>Memorandum and Order</u>, Doc. 221, filed March 24, 2009.  Production of the Becht documents will not be revisited in this opinion.

Thus, National's motion to compel a more complete response to Production Request No. 18 is DENIED.


**Privilege Log**

National concedes that plaintiff has now produced a privilege log and the parties are currently engaged in the "meet and confer process" over possible deficiencies. Accordingly, the request to compel a privilege log is MOOT.


**IT IS THEREFORE ORDERED** that National's motion to compel a more complete response to production requests (Doc. 193) is GRANTED IN PART and DENIED IN PART. Plaintiff shall provide more complete responses, consistent with the rulings herein, on or before **April 20, 2009**.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 7th day of April 2009.


S/ Karen M. Humphreys
KAREN M. HUMPHREYS
United States Magistrate Judge