# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**COFFEYVILLE RESOURCES** )
**REFINING & MARKETING,** )
                                )
        **Plaintiff,**       )
                                )
**v.**                                  )   **Case No. 08-1204-WEB**
                                )
**LIBERTY SURPLUS INSURANCE** )
**CORPORATION, et al.,** )
                                )
        **Defendants.**    )
                                )

## MEMORANDUM AND ORDER

This matter is before the court on the following motions:

    1. National Union's Motion to Disqualify Counsel (Doc. 205);

    2. Coffeyville Resources' Motion to Compel (Doc. 207);

    3. National Union's Motion to Depose James Berry (Doc. 218);

    4. National Union's Motion to Strike Supplemental Expert Witness Disclosures (Doc. 225);

    5. Coffeyville Resources' Motion to Compel (Doc. 244);

    6. Coffeyville Resources' Motion to Quash (Doc. 246); and

    7. Coffeyville Resources' Motion to File Out of Time (Doc. 258).

The rulings are set forth below.

**Background**

This is a breach of contract action by plaintiff against its insurers. Highly summarized, plaintiff alleges that the Verdigris River topped its banks in the Coffeyville, Kansas area on the afternoon of June 30, 2007; the water continued to rise that evening and the following day. The rapidly rising flood waters required an emergency shutdown of Coffeyville Resources' refinery and plaintiff accidentally released 80,000 gallons of crude oil and 9,000 gallons of crude oil fractions into the flood waters. The flood waters transported the crude oil into and around the City of Coffeyville and caused extensive damage.

Plaintiff had pollution and/or general liability insurance coverage with defendants and, as of the date this lawsuit was filed, has received ten million dollars in indemnification from defendants.[1] However, plaintiff alleges that it has expended more than fifty million dollars for remediation, settlements, administrative costs, litigation costs and fines associated with the oil pollution. Plaintiff contends that the insurers have breached their respective insurance contracts and seeks to recover the difference between its expenditures and insurance reimbursements.

**National Union's Motion to Disqualify Counsel**

National Union Fire Insurance Company moves to disqualify Joseph A. Ziemianski

---

[1] Defendant Liberty Surplus Insurance settled with plaintiff for an undisclosed amount after this case was filed. (Doc. 44, filed September 23, 2008).

-2-

and Bryan P. Vezey from representing Illinois Union Insurance Company Litigation in this action. (Doc. 205). Specifically, National Union argues that Mr. Ziemianski should be disqualified from representing Illinois Union because of a "concurrent" conflict of interest in violation of Kansas Rules of Professional Conduct ("KRPC") 1.7.[2] National Union also seeks disqualification under KRPC 1.9(a) because Illinois Union's interests in this action are materially adverse to National's interests and Mr. Ziemianski represented National Union in

---

[2]

    KRPC 1.7 provides:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

    (1) the representation of one client will be directly adverse to another client, or
    (2) there is a substantial risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

    (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
    (2) the representation is not prohibited by law;
    (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
    (4) each affected client gives informed consent, confirmed in writing.

"substantially related matters."[3]  Finally, National Union asserts that Mr. Ziemianski's conflicts are imputed to Mr. Vezey under KRPC 1.10(a); therefore, Mr. Vezey should be disqualified as well.[4]  Illinois Union counters that the motion should be denied because of National's unjustified delay in moving to disqualify counsel.[5]  As explained in greater detail below, National's delay in bringing the alleged ethical violation before the court is fatal to its motion.

The court has inherent supervisory powers to control attorneys and motions to disqualify counsel are committed to the court's sound discretion.  Koch v. Koch Industries, 798 F. Supp. 1525 (D. Kan. 1992).  A federal court sitting in Kansas and deciding a motion to disqualify for a conflict of interest generally looks to the Kansas Rules of Professional Conduct for guidance.  See, e.g., Graham ex rel. Graham v. Wyeth Laboratories, 906 F.2d

---

[3] KRPC 1.9(a) provides:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

[4] KRPC 1.10(a) provides:

While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

[5] Mr. Ziemianski vigorously disputes the accusation that he violated KRPC 1.7 and 1.9(a).  The court finds it unnecessary to resolve factual and legal disputes concerning Rules 1.7 and 1.9(a) because the motion is denied based on National's unjustified delay in filing the motion.

1419 (10th Cir. 1990). However, an unjustified delay in filing a motion to disqualify alone is sufficient grounds for denying the request. Redd v. Shell Oil Company, 518 F.2d 311 (10th Cir. 1975). "A litigant may not delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed." Monarch Normandy Square Partners v. Normandy Square Associates Limited Partnership, 1989 W.L. 86963 at *3 (D. Kan. July 26, 1989).

Moreover, attempts to use the Rules of Professional Conduct to gain a tactical advantage or to harass an opposing party are viewed with disfavor. The preamble to the Kansas Rules of Professional Conduct makes clear that the rules were adopted for the regulation of attorney conduct *through disciplinary proceedings* and that the rules should be applied cautiously in collateral proceedings:

> [20] Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. In addition, ***violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation.*** The Rules are designed to provided guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, ***the purpose of the rules can be subverted when they are involved by opposing parties as procedural weapons.*** The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule.

Preamble to the Kansas Rules of Professional Conduct (amended May 1, 2007, emphasis added).

As noted above, National Union argues that Mr. Ziemianski has a "concurrent"

conflict in violation of KRPC 1.7 because he was representing National Union in two other cases when, in July 2007, he began representing Illinois Union concerning Coffeyville's insurance coverage claims.[6] National Union also argues that Mr. Ziemianski's representation of Illinois Union violates KRPC 1.9(a) because his prior representation of National involved "substantially related matters" concerning "coverage sequencing" and application of the "pollution exclusion" in National's policy. However, as explained below, National's motion to disqualify was not timely filed.

Mr. Ziemianski began representing Illinois Union with respect to Coffeyville's coverage claims in July 2007. Despite the potential for conflict by Mr. Ziemianski's representation of Illinois Union, National voiced no objection and took no action. On March 18, 2008, Mr. Ziemianski sent a letter to National Union rejecting National's position that Coffeyville had to exhaust Illinois Union's policy before National Union's policy would come into play. Notwithstanding the disagreement concerning the sequence of policy

---

[6]

National Union retained Mr. Ziemianski in June 2006 to represent it and other AIG-related insurance companies in In Re: EDC Contractor Insurance Litigation, Case No. 98-1984, Parish of Calcasieu, 14th Judicial District, State of Louisiana (the "Conoco" litigation). The Conoco litigation was settled in principle on November 2, 2007 and National Union was formally dismissed from the lawsuit in July 2008.

National Union also retained Mr. Ziemianski to represent it in Valero Energy Corp. v. Steadfast Ins. Co., Case No. 2003-CI-02590, 73rd Judicial District of Bexar County, Texas. Mr. Ziemianski asserts that there were actually two lawsuits. Valero I involved the enforceability of a prior settlement agreement and was settled in September 2006. Valero II involved coverage issues and apparently had been dormant since March 14, 2007 before the case was transferred to another law firm at National's request in September 2008.

coverage, National Union took no action to disqualify Mr. Ziemianski from representing Illinois Union.[7]

Coffeyville filed this lawsuit on July 10, 2008 and Mr. Ziemianski and Mr. Vezey's motions to appear *Pro Hac Vice* were granted on August 25, 2008. On September 3, 2008, the parties submitted a "Report of Parties' Planning Conference" to the undersigned judge. Included in Illinois Union's analysis of the case were statements to the effect that the insurers have actual or potential differences between themselves concerning the proper sequencing of the coverage obligations. The Report then went on to describe the disagreement.[8] Although the disagreement between Illinois Union and National Union had again been spelled out in writing, National voiced no objection and took no action concerning Mr. Ziemianski's representation in the case.

The scheduling order in this case established an October 30, 2008 deadline for dispositive motions related to coverage issues and a discovery deadline of January 30, 2009. (Doc. 46). Consistent with the scheduling order, both National Union and Illinois Union

---

[7] National asserts that Mr. Ziemianski said he would withdraw from representation of Illinois Union if litigation was filed. Mr. Ziemianski denies that he ever made such representations. The court is unable to resolve this factual dispute of "who-said-what" before the lawsuit was filed. However, it is unclear why National Union was willing to waive the coverage sequencing dispute before the lawsuit was filed but not after. More importantly, Mr. Ziemianski formally entered his appearance in this lawsuit on behalf of Illinois Union on August 25, 2009. If in fact National Union believed that Mr. Ziemianski had promised to withdraw if litigation was filed, National should have moved to disqualify shortly after August 25. Instead, National waited until discovery and briefing of the coverage issues were completed before moving for disqualification.

[8] The language in the planning report mirrors the analysis which Mr. Ziemianski (on behalf of Illinois Union) provided to National Union in the March 19, 2008 letter.

filed motions for partial summary judgment on October 30, 2008. Illinois Union sought, in part, a ruling that its policy did not attach until coverage under National Union's policy was exhausted. Similarly, National's motion for partial summary judgment requested a ruling that its policy did not attach until the Illinois policy limits were exhausted. By letter dated November 19, 2008, National Union requested that Mr. Ziemianski withdraw from representing Illinois Union. When Mr. Ziemianski declined the request to withdraw from representation of Illinois Union, National filed its motion to disqualify on February 26, 2009.

In summary, National Union was aware of the *potential* for conflict in July 2007 when Mr. Ziemianski began representing Illinois Union and was also aware of an *actual* disagreement between National Union and Illinois concerning policy sequencing as early as March 2008. Notwithstanding knowledge of the disagreement about policy sequencing, National waited until the parties' motions for partial summary judgment were fully briefed and discovery was completed before moving to disqualify Mr. Ziemianski and Mr. Vezey. The delay in moving to disqualify is inexcusable and unjustifiable. Disqualification of Mr. Ziemianski and Mr. Vezey at this point in the case would be unfairly prejudicial to both Illinois Union and plaintiff.[9] Under the circumstances, the motion to disqualify Mr. Ziemianski and Mr. Vezey is DENIED.

---

[9]

Because the legal briefing has been completed concerning the coverage issues, it is not at all clear what is accomplished by disqualifying Mr. Ziemianski and Mr. Vezey at this point. At best, forcing Illinois Union to retain new counsel would introduce additional delays in the case which would be highly prejudicial to plaintiff's efforts to timely recover insurance proceeds.

**IT IS THEREFORE ORDERED** that National Union's motion to disqualify Mr. Ziemianski and Mr. Vezey from representing Illinois Union in this case **(Doc. 205)** is **DENIED.**

### Coffeyville's Motion to Compel the Return of Documents

Coffeyville moves to compel National Union to return 22 privileged documents that were inadvertently produced. Coffeyville argues that the documents should be returned pursuant to the protective order in this case and Fed. R. Civ. P. 26(b)(5)(B). (Doc. 207). For the reasons set forth below, Coffeyville's motion shall be GRANTED.

National Union requested and was granted a protective order containing the following language:

> 16. Inadvertent Production of documents, things, or information subject to confidentiality restrictions, the attorney-client privilege, or work-product immunity (despite the Producing Parties' reasonable efforts to pre-screen such documents and information prior to production) does not waive the confidentiality restriction, attorney-client privilege, or work product immunity. Any attorney-client privileged communications or work product materials that are inadvertently produced ***shall be promptly returned*** to counsel for the Producing Party ***without review or copying*** and shall not be used in discovery or at trial for any purpose, unless otherwise obtained.

Doc. 56 (emphasis added).

Coffeyville advised National Union in letters dated December 18, 2008 and February 5, 2009 that computer discs had been provided containing inadvertently produced attorney-client privileged or work product documents. Citing the language of the protective order, Coffeyville requested that the discs be returned and all hard copies be destroyed. Coffeyville

also provided replacement discs without the privileged materials. However, rather than "promptly" returning the documents as required by the protective order, National retained the materials.[10] Coffeyville then filed this motion for the return of the documents.

National opposes Coffeyville's motion for return of the documents, arguing that plaintiff has not shown that the documents are protected by the attorney-client privilege or work product doctrine and proposes that the court conduct an *in camera* review of the documents. The court declines National's request for an *in camera* review and ruling on whether the documents are protected by the attorney-client privilege. The protective order unequivocally required National to "promptly return" documents inadvertently produced and National has failed to comply with the court's order.[11] Accordingly, Coffeyville's motion shall be GRANTED.

**IT IS THEREFORE ORDERED** that Coffeyville's motion to compel the return of

---

[10] National's response brief (1) agrees to return three documents and (2) requests additional information concerning seven documents.

[11] The proper course of action would have been for National to promptly return the materials and, if necessary, move to compel production of certain documents. This is more than a "form-over-substance" requirement because, as evidenced in the parties' briefing, National withdrew its objection to the return of documents CR23886-CR23904 and CR23905-CR23915 based on information provided in plaintiff's motion. Additionally, Coffeyville's reply brief contains a privilege log concerning the disputed documents. Equally confusing, Coffeyville's motion seeks the return of 22 documents while National argues that only 12 documents were identified in the December 18, 2008 and February 5, 2009 letters. These matters should have been addressed during the meet and confer process normally associated with National's unfiled motion to compel discovery.

documents **(Doc. 207)** is **GRANTED.** National Union shall return the discs containing the documents and destroy all hard copies of the materials by **September 25, 2009.**

### National Union's Motion to Depose James Berry

Mr. James Berry, a Coffeyville employee, refused to appear for deposition, arguing that he was battling cancer and too ill to sit for his deposition. National moves for an order granting it leave to depose Mr. Berry arguing that Coffeyville and/or Mr. Berry have failed to provide sufficient evidence that Berry's health condition is such that he cannot appear for his deposition.

The materials submitted on behalf of Mr. Berry indicate that he had surgery related to his cancer in January 2009 followed by chemotherapy treatments. The court is satisfied that the status of Mr. Berry's health in the spring of 2009 justified his refusal to voluntarily appear for a deposition. Accordingly, National's motion shall be denied. However, the court's ruling is without prejudice. The parties shall confer concerning Mr. Berry's current medical status and National is granted leave to renew its efforts to secure Mr. Berry's deposition.[12]

**IT IS THEREFORE ORDERED** that National Union's motion for leave to depose James Berry **(Doc. 218)** is **DENIED WITHOUT PREJUDICE**, consistent with the rulings

---

[12] The issue of Mr. Berry's deposition shall remain open as long as this case remains pending.

herein. National's motion for leave to file a surreply **(Doc. 242)** is unopposed and **GRANTED.** The court has considered National's surreply in ruling on National's motion.

### National Union's Motion to Strike
### Supplemental Expert Witness Disclosures

The scheduling order required Coffeyville to serve its Rule 26(a)(1) expert disclosures by January 15, 2009. Coffeyville served its expert disclosures on January 14, 2009, listing three experts. On January 13, 2009, plaintiff filed its "Supplemental Expert Witness Disclosures" and listed seven additional expert witnesses. National objected to the belated disclosure but agreed to withdraw its objection if Coffeyville presented each of the seven additional witnesses for deposition. Coffeyville rejected National's proposal concerning the additional depositions. National now moves to strike the supplemental disclosures, arguing that the disclosures are untimely.

Clearly, Coffeyville's "supplemental expert disclosures" are untimely and the seven additional experts will not be allowed to offer expert testimony in this case unless they appear for deposition. Accordingly, National Union's motion to strike shall be GRANTED, subject to the taking of their depositions by National.

**IT IS THEREFORE ORDERED** that National Union's motion to strike **(Doc. 225)** is **CONDITIONALLY GRANTED**, subject to the taking of their depositions by National. If the seven witnesses appear and provide deposition testimony, they shall be allowed to

participate as expert witnesses in the case. Their depositions shall be completed by **November 16, 2009**.

### Coffeyville's Motion to Compel

Coffeyville moves to compel National Union to respond to Interrogatory Nos. 7, 9, 10, and 11 and Production Request Nos. 3, 10, 11, and 15. (Doc. 244). National Union argues that the requests seek irrelevant information and are overly broad and unduly burdensome. For the reasons set forth below, the motion shall be GRANTED IN PART and DENIED IN PART.

**1. Interrogatory No. 7**

Interrogatory No. 7 asks National Union to identify all insurance claims processed in the last 10 years "based on the same or similar policy provisions" on which National relies to deny or limit CRRM's claim for insurance coverage. For each claim, Coffeyville asks that National identify: (1) the nature of the claim and whether the claim was granted, denied, or settled; (2) the specific claimant and all persons with knowledge of the claim; (3) all documents that concern the claim; and (4) any related litigation or lawsuit. National argues that the interrogatory is overly broad and unduly burdensome. The court agrees. The request is overly broad because the sweeping request would require National to produce detailed information concerning claims that have little or no similarity to the controversy before the court. More importantly, the request is unduly burdensome. National estimates that the

-13-

interrogatory would require it to manually review nearly 95,000 open and closed pollution claim files at an estimated cost of 4.5 million dollars. Accordingly, the request to compel an answer to Interrogatory No. 7 is DENIED.

**2. Interrogatory No. 9**

Interrogatory No. 9 asks National Union to identify and describe the contents of any reinsurance agreement. National argues that it has no information responsive to this request because there is no applicable reinsurance.[13] Because there is no information responsive to this request, the motion to compel is DENIED.

**3. Interrogatory No. 10 and Production Request No. 15**

Interrogatory No. 10 asks for the monetary amount of any reserve designated by National Union for Coffeyville's oil pollution coverage claim. Production Request No. 15 asks for all documents that reflect or relate to National's reserve for Coffeyville's pollution claim. National opposes the motion, arguing that the amount of reserve for Coffeyville's claim was established in consultation with and based on materials and input provided by counsel; therefore, the information requested is protected by the work product doctrine. The court agrees. As Coffeyville asserted earlier in support of own claim of work product protection, litigation was anticipated by August 2007. The determination of the reserve

---

[13] National Union also devotes two pages of its brief to the argument that reinsurance information has no relevance to the claims in this case. Because there is no reinsurance, the court does not address National's relevance argument.

-14-

amount in consultation with counsel falls within the work product doctrine and is protected from discovery.[14] Thus, Coffeyville's motion to compel Interrogatory No. 10 and Production Request No. 15 shall be DENIED.

**4. Interrogatory No. 11**

Interrogatory No. 11 asks for all complaints made against National Union or one of its subsidiaries during the past five years related to any commercial umbrella liability claim related to pollution. The request includes complaints made directly to National or to any state or federal regulator. National opposes the request, arguing that the search to gather such information would be unduly burdensome because it does not list or categorize such complaints in the manner in which Coffeyville framed its discovery request. The court is satisfied that National has shown that the search would be unduly burdensome. National has determined that it processed approximately 11,700 pollution claims which involve umbrella policies during the past five years and the cost to manually review these files would exceed $440,000. Accordingly, Coffeyville's motion to compel Interrogatory No. 11 is DENIED.

**5. Production Request Nos. 3, 10, and 11**

Production Request No. 3 seeks all of National Union's underwriting manuals related to issuance of primary or excess commercial umbrella liability policies. Production Request

---

[14] The parties' arguments as to whether the reserve amount and related documents are relevant leave much to be desired. The court assumes that the requests are "relevant" given the expansive view of "relevance" in the context of discovery.

-15-

No. 10 seeks copies of National's underwriting manuals, bulletins or procedures related to issuance of primary or excess commercial umbrella liability coverages. Production Request No. 11 seeks copies of all claims manuals, training manuals, claims bulletins, and memoranda to claims personnel regarding the investigation and determination of pollution or contamination claims. National opposes the requests, arguing that the requests are overly board because the requests are not limited to any time frame. The court agrees that the requests for "all" manuals is overly broad unless some time frame is imposed. Accordingly, the court will limit the temporal scope of manual production to the time frame during which Coffeyville had insurance with National Union or one of its subsidiaries.

With respect to National Union's "lack of relevance" argument, the court is satisfied that the manuals and related documents are relevant in the context of discovery. Coffeyville has requested attorney fees under K.S.A. 40-256 for National Union's alleged refusal to pay Coffeyville's claims without just cause or excuse and for unreasonably withholding insurance proceeds. Because discovery of the manuals is reasonably calculated to lead to evidence as to whether National wrongly refused to pay the insurance claim, the requests are relevant. Additionally, the manuals may show that National interprets its policy language in a manner which differs from the position argued in this case. Therefore, Coffeyville's motion to compel Production Request Nos. 3, 10, and 11 shall be GRANTED.[15]

---

[15] The court declines National's request that discovery of the manuals be deferred until Coffeyville first secures a judgment for insurance proceeds.

**IT IS THEREFORE ORDERED** that Coffeyville's motion to compel **(Doc. 244)** is **GRANTED IN PART** and **DENIED IN PART,** consistent with the rulings herein.

**IT IS FURTHER ORDERED** that Coffeyville's motion for leave to file its reply brief out of time **(Doc. 258)** is **GRANTED.**

### Coffeyville's Motion to Quash

National Union served Coffeyville with a deposition notice for Edmund Gross, Coffeyville's general counsel. Coffeyville moves to quash and for a protective order. As explained in greater detail below, Coffeyville's motion shall be DENIED.

Coffeyville asserts a number of arguments in support of its protective order, none of which are persuasive. First, Coffeyville argues that National Union has not satisfied the Shelton criteria for deposing opposing counsel. Shelton v. American Motors Corp., 805 F. 2d 1323, 1327 (8th Cir. 1986).[16] However, the Tenth Circuit "does not require lower courts to utilize a definitive test (such as the Shelton criteria) in every case where opposing counsel's deposition is sought." Simmons Food, Inc., v. Willis, 191 F.R.D. 625, 630-31 (D. Kan. 2000)(citing Boughton v. Cotter Corp., 65 F. 3d 823, 829-31 (10th Cir. 1995). *In this case*, Mr. Gross has appeared as Coffeyville's Rule 30(b)(6) deposition witness and filed two affidavits in support of Coffeyville's summary judgment motions. The court is not persuaded

---

[16] The Shelton criteria requires the following showing before the deposition of opposing counsel may be taken: (1) no other means exists to obtain the information except to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to preparation of the case.

-17-

that application of the Shelton criteria is warranted where opposing counsel has been the corporate designee for Rule 30(b)(6) deposition purposes. Equally important, Mr. Gross is a fact witness to events related to the flood and Coffeyville's submission of insurance requests to both Illinois Union and National Union.

Coffeyville also argues that the proposed deposition of Mr. Gross violates the court's March 24, 2009 ruling on Coffeyville's motion for a protective order and National Union's motion to compel. (Doc. 221). Specifically, Coffeyville argues that the order "forbids further discovery regarding Coffeyville Resources' consulting expert, Becht Engineering." However, review of the order reveals a more limited ruling. National Union's motion to compel discovery concerning Becht Engineering was "denied without prejudice" based on the record before the court. The court did not foreclose additional discovery which might show that exceptional circumstances justify the discovery of the Becht materials.[17]

In a related argument, Coffeyville contends that Kansas case law prohibits *any* discovery concerning a consulting expert. The rules concerning consulting experts were set forth in the March 24, 2009 ruling and will not be repeated. (Doc. 221). However, discovery may be allowed if a party can show "exceptional circumstances" under Rule 26(b)(4) or "substantial need" under Rule 26(b)(3). Whether the deposition of Mr. Gross will support National Union in arguing "exceptional circumstances" or "substantial need" is unclear at

---

[17] Apparently, one line of questions will address the names of witnesses interviewed by Mr. Gross and Becht Engineering immediately after the flood. The inability to secure similar interviews at this time from the witnesses may be evidence of "exceptional circumstances."

-18-

this time. However, the mere fact that Coffeyville retained a non-testifying consulting expert does not automatically preclude the taking of Mr. Gross' deposition.

Finally, Coffeyville argues that Mr. Gross has already testified as a Rule 30(b)(6) witness and therefore has no more non-privileged information to share. However, as National correctly points out, *Illinois Union* took Mr. Gross' Rule 30(b)(6) deposition. Moreover, the court is not prepared to enter a protective order based on the conclusory assertion that Mr. Gross' Rule 30(b)(6) deposition testimony "answered all permissible questions." Under the circumstances, Coffeyville's request to quash and for a protective order is DENIED.

**IT IS THEREFORE ORDERED** that Coffeyville's motion to quash and for a protective order **(Doc. 246)** is **DENIED.**

Dated at Wichita, Kansas this 16th day of September 2009.

S/ Karen M. Humphreys<br>
KAREN M. HUMPHREYS<br>
United States Magistrate Judge