IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| COFFEYVILLE RESOURCES REFINING & MARKETING, LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )  No. 08-1204-WEB-KMH<br>) |
| LIBERTY SURPLUS INSURANCE CORPORATION, | )<br>)<br>) |
| ILLINOIS UNION INSURANCE COMPANY, | )<br>) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and | )<br>)<br>) |
| WESTCHESTER FIRE INSURANCE COMPANY, | )<br>)<br>) |
| Defendants. | )<br>) |

**Memorandum and Order**

This matter is before the court on the following motions: Coffeyville Resources' Motion to Clarify and/or for Reconsideration (Doc. 300); National Union's Motion for Reconsideration (Doc. 303); and Illinois Union's Motion for Certification for Immediate Appeal (Doc. 305).

I. *Coffeyville Resources' Motion to Clarify and/or for Reconsideration* (Doc. 300).

The court made numerous findings in its April 28, 2010 Memorandum and Order, including the following. The Illinois Union policy is primary and the National Union policy is excess with respect to plaintiff's loss from property damage claims that are within the coverage of both policies. Regarding "clean-up costs," the Illinois Union policy excludes such costs to the extent they result solely from obligations under environmental laws, but not to the extent they overlap with or constitute settlement of property damage claims. The National Union policy's

treatment of clean-up costs under Endorsement 28 by contrast is ambiguous, the result of which is that the National Union policy, unlike the Illinois Union policy, covers clean-up costs relating to third-party property damage even if such costs result solely from obligations under environmental laws or governmental orders.[1]  With respect to clean-up costs within the scope of National Union coverage but excluded by Illinois Union, National Union's coverage is excess only of a $5 million Self-Insured Retention [SIR].  Upon exhaustion of the $5 million SIR, National Union is obligated to "drop down" and cover such costs.

      Coffeyville Resources' Motion to Clarify or for Reconsideration asks the court to declare that the previously tendered Liberty Insurance payments and the payments to be made by Illinois Union serve to reduce and exhaust the $5 million SIR, such that the National Union coverage will commence with the first dollar of additional National Union covered losses not covered by Illinois Union.  Doc. 301 at 18-19.  Plaintiff notes that the court "did not expressly opine on the status of the $5 million SIR exhaustion," although plaintiff says certain statements in the prior order implied that exhaustion of the $5 million SIR has not yet occurred.  Plaintiff contends the uncontroverted facts show the SIR has been exhausted because it is subject to reduction by payment of any $5 million related to the "Occurrence" or "Loss," whether such payment is by the insured or by another insurance carrier.  Plaintiff further contends Liberty's payment of its $25 million limit – including a sublimit of $10 million for clean-up costs – establishes that more than $5 million has already been expended on clean-up costs and that the SIR has been

---

[1] The court concluded from the uncontroverted facts that the oil release was "abrupt and neither expected nor intended by the Insured," thus falling within the qualified pollution coverage of the National Union policy.  National Union has filed a motion under Rule 59(e), *see infra*, asking the court to reconsider this ruling.

exhausted.  *Id*. at 16.  Plaintiff argues the court should address the issue to clarify or correct any inference from the summary judgment suggesting that the SIR has not been exhausted.

In response, National Union argues plaintiff's motion is improper because it seeks relief beyond what was sought in the initial summary judgment motion, and it therefore fails to satisfy the conditions for reconsideration under Rule 59(e) or D.Kan.R. 7.3.  As for the merits of plaintiff's argument, National first contends the $1 million SIR under the Liberty policy does not reduce the National Union SIR because "nowhere in the National Union Pollution Endorsement does it state that the amounts paid by the insured to satisfy a different SIR can reduce the National Union $5,000,000 SIR."  Doc. 302 at 5.  Moreover, National contends plaintiff did not argue or set forth any evidence to show that sums received from Liberty were for payment of "judgments or settlements" within the National policy coverage for "Loss."  National next asserts that the court's summary judgment ruling did not find the Retained Limit definition to be ambiguous, and disputes any suggestion by plaintiff that the court found National Union was obligated to pay all alleged clean-up costs "starting at dollar one."  *Id*. at 6.  Lastly, National points out that there has been no adjudication with respect to how much, if any, of the remaining unreimbursed costs constitute reasonable and necessary clean up costs, or the extent to which any such costs are excluded under the Illinois Union policy.

*Discussion*.

The local rules of this district recognize motions for reconsideration of "non-dispositive" orders.  D.Kan.R. 7.3(b).  By contrast, motions to reconsider "dispositive" orders or judgments must be asserted under Rule 59(e) or Rule 60 of the Federal Rules of Civil Procedure.  *See* D.Kan. 7.3(a).  There is some uncertainty whether orders disposing of some but not all claims –

such as the court's summary judgment ruling – are considered dispositive under the local rule.[2]
*Compare Johnson v. Simonton Bldg. Properties, Inc.*, 2009 WL 902409, * 2 (D. Kan., Mar. 31, 2009) ("the court's order was dispositive because it terminated some of plaintiff's claims.") and *Seyler v. Burlington Northern Santa Fe Corp.*, 121 F.Supp.2d 1352, 1355 (D. Kan. 2000) ("The Court's rulings. ... were non-dispositive, in that they did not fully resolve the case and could be challenged by a timely motion under Rule 7.3(b),..."). This judge has previously concluded that such rulings are interlocutory in character and are non-dispositive within the meaning of Rule 7.3(b). *See Fusco v. Insurance Planning Center*, No. 05-1245 (D. Kan.) (Doc. 140) ("dispositive order" in Rule 7.3 means a final judgment or order that disposes of all remaining claims in the case). *Cf.* Fed.R.Civ.P. 54(b) (any order that adjudicates fewer than all the claims or rights of all the parties may be revised at any time before the entry of a final judgment).[3] The court therefore considers the parties' motions in this case under D.Kan. R. 7.3(b).

Under Rule 7.3(b), a motion seeking reconsideration generally must be based on an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice. A motion to reconsider is available when the court has misapprehended the facts, a party's position, or the controlling law, but it is not appropriate to

---

[2] This distinction is somewhat academic, because local rule 7.3(b) and federal rule 59(e) employ similar standards, but the time limits for filing such motions differ.

[3] Rules 59(e) and 60(b) are applicable only to final orders and judgments that adjudicate all of the parties' remaining rights and liabilities. *See e.g., Fye v. Oklahoma Corp. Commission*, 516 F.3d 1217, 1223, n. 2 (10th Cir. 2008); *Raytheon Constructors, Inc. v. Asarco Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003). A motion to reconsider a partial summary judgment ruling, by contrast, is considered "an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." *Fye, supra.*

revisit issues already addressed or to advance arguments that could have been raised in prior briefing. *See e.g., Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (addressing motion under Rule 59(b)). The decision whether to grant a motion to reconsider is committed to the district court's discretion. *In Re Motor Fuel Temp. Sales Practices Litigation*, 707 F.Supp.2d 1145, 1166 (D. Kan. 2010).

The court's summary judgment ruling in this case did not address whether the Liberty payment exhausted the National Union SIR because the parties did not raise that issue as part of the summary judgment motions. Ordinarily, the court would decline to address any such matter on reconsideration that could have been presented in the initial motion. But the court agrees with plaintiff that under the complex arrangements presented by the various policies, any question about exhaustion of the National Union SIR at the time of plaintiff's initial motion was contingent upon resolution of a number of underlying coverage questions. Only after resolution of those preliminary issues by the court did exhaustion of the National Union SIR become a concrete as opposed to hypothetical issue. Under the circumstances, the court concludes it is appropriate to address exhaustion of the SIR in the instant motion, now that the matter has become ripe for resolution in view of the court's construction of the Liberty Surplus, Illinois Union, and National Union polices. The court further concludes it is appropriate to do so in order to avoid misconstruction of the findings in the court's prior Memorandum and Order. National Union presents no substantive reason why the matter – which presents a legal question based upon uncontroverted facts – should not now be addressed.

National Union promised under certain circumstances to pay "sums in excess of the Retained Limit" that plaintiff became legally obligated to pay as damages because of property

damage. In its prior order, the court determined that National's coverage includes property damage from the July 1, 2007 release of crude oil from plaintiff's refinery because the release was abrupt and neither expected nor intended by plaintiff. The court further determined the National Union policy was ambiguous with respect to coverage for "clean-up costs" incurred solely as a result of governmental orders or regulations, and the National Union policy – unlike the Illinois Union policy – would therefore be construed to cover such costs.

The "Retained Limit" was defined by the National policy to mean:

> 1. the total applicable limits of Scheduled Underlying Insurance and any applicable Other Insurance providing coverage to the Insured; or
>
> 2. the Self-Insured Retention applicable to each Occurrence that results in damages not covered by the Scheduled Underlying Insurance nor any applicable Other Insurance providing coverage to the Insured.

The National Union policy set the Self-Insured Retention at $5 million in cases of pollution liability.

On summary judgment, the court determined that the first provision above applies when there is other applicable insurance covering damages also covered by National Union. To the extent there is other applicable insurance, the National Union policy is excess of such coverage. The second provision applies when there is no other applicable coverage. With respect to property damage for which there is no other applicable coverage – including any outstanding clean-up costs excluded by the Illinois Union policy – National Union's coverage is excess only of the $5 million SIR.[4]

---

[4] The National Pollution Endorsement actually provides that the $5 million SIR "applies whether or not there is any available ... Other Insurance." Thus, National Union's pollution

The National Union Pollution Endorsement specifically addressed reduction and exhaustion of the SIR: "If there is ... Other Insurance applicable to a Loss, amounts received through such ... Other Insurance for payment of the Loss may be applied to reduce or exhaust the above Self-Insured Retention if such policies were purchased by the Named Insured to specifically apply as underlying insurance to this policy." National Union concedes that the Liberty Surplus and Illinois Union policies constitute "Other Insurance" that plaintiff purchased specifically to apply as underlying insurance to the National Union policy. Doc. 302 at 5, n.6. Given the policy provisions and the undisputed facts, the court cannot escape the conclusion that the National Union $5 million SIR has indeed been exhausted. Liberty has now paid its limits of $25 million, including a $10 million sublimit for clean-up costs. National Union has not alleged or shown any grounds for challenging exhaustion of the Liberty policy with respect to clean up costs or other coverage. National argues plaintiff has failed to show that the sums received from Liberty were for payment of "judgments or settlements." But plaintiff has presented clear evidence that it made more than $5 million in payments covered by the Liberty policy to resolve claims within the coverage of the National Union policy, including more than $5 million in clean-up costs required under the Administrative Order of Consent reached with the EPA. The National Union policy provides that such payments will reduce and exhaust the $5 million SIR. National Union correctly points out that there has been no adjudication as to plaintiff's remaining unreimbursed costs and whether any of those claimed costs are actually "clean up costs" excluded by the Illinois Union policy and covered by the National Union policy. To the extent any of those costs are determined to be within the Illinois Union property damage

---

coverage always requires exhaustion of at least the $5 million SIR.

coverage, National points out that it has no obligation to reimburse such costs unless and until the Illinois Union policy is exhausted. National's assertions are both true, but it is nevertheless correct to say, as plaintiff argues, that the Liberty Surplus payments have exhausted the National Union $5 million SIR and the National Union coverage will commence with the first dollar of additional National Union-covered losses for which Illinois Union does not provide coverage. Accordingly, plaintiff's motion for clarification is granted to that extent.

II. *National Union's Motion to Reconsider* (Doc. 303).

National Union asks the court to reconsider its conclusion that the oil release from the refinery was "abrupt" as a matter of law under the National Union policy. For the reasons indicated above, the court considers the motion under the standards of local rule 7.3(b), rather than Rule 59 or 60. Although the motion is arguably untimely under that rule, plaintiff has not objected on that ground, and the court concludes it is appropriate to address the motion.

National Union argues that in evaluating whether the oil release was abrupt, the court "erroneously conflated the distinction between whether the release was 'without notice or warning' and whether Plaintiff subjectively 'expected' that the release would occur." Doc. 304 at 4. National argues that Kansas law requires examination of both of these questions and says that if inferences in the record are drawn in favor of National Union, a jury could find that the release was not abrupt because plaintiff had advance notice or warning that the release would occur.

National Union's arguments are well-stated, as they were in its original motion for summary judgment. The court considered all of those arguments in ruling on the summary judgment motions. As the court noted in its Memorandum and Order, "[t]he focus in

8

determining whether the temporally 'sudden' discharge is met is on the initial release of the pollutant...." Doc. 299 at p. 53. The temporal component refers "to both the inception and duration of the pollution." *Id*. at 54. It "combines both elements of without notice or warning and quick or brief in time." *Id*. The court then proceeded to apply those standards, observing that the release here occurred not over a period of several months or days, but in a matter of hours. *Id*. at 56. The court noted that the nature of the flood and the emergency shut-down of the refinery left the plaintiff little time to contemplate the prospect of a release, and the entry of flood waters into the refinery actually meant plaintiff was faced with the prospect of a release regardless of whether it continued to fill the tanks or whether it chose to close the valves and shut off the flow into the tanks. *Id*. at 56-57. The court discussed in detail the circumstances surrounding the release and the state of knowledge of the plaintiff and its employees, and how the uncontroverted facts showed that plaintiff did not act with a realization that a release was going to occur. *Id*. at 57-58. The court also reviewed numerous cases, and noted that defendant "cites no comparable case where a one-time release over a span of several hours was held to be insufficiently 'abrupt' under a qualified pollution exclusion." *Id*. at 56. After considering the case law, the uncontroverted facts, and the parties arguments, the court concluded as a matter of law that the release was "abrupt and neither expected nor intended by the insured." *Id*. at 59. Defendant has not shown that the court misapprehended the facts or law, or that the foregoing conclusion amounts to clear error. The court again concludes that the release was abrupt within the meaning of the policy and that it falls within National Union's pollution coverage.

III. *Illinois Union's Motion for Certification to allow Immediate Appeal* (Doc. 305).

Illinois Union asks the court to certify that the conditions for an interlocutory appeal under 28 U.S.C. § 1292(b) have been met. It seeks an immediate appeal of two issues: whether the Illinois Union policy covers clean-up costs and "whether the anticipated claims of the members of an uncertified class action suit constitute 'claims' under the Illinois Union policy." Illinois Union argues these are controlling questions of law as to which there are substantial grounds for difference of opinion, and that an interlocutory appeal would materially speed the termination of the litigation. The legal issues are matters of first impression, Illinois Union says, and could well be viewed differently by an appellate court. It further argues that if the Tenth Circuit were to find the Illinois Union policy barred all clean-up costs, and further find that a prospective claim of an uncertified class member is not a written demand within the meaning of the policy, then plaintiff would be "barred entirely or almost entirely from recovering under the Illinois Union policy." Doc. 305 at 5. Illinois Union contends its appeal of these controlling issues "is inevitable," and that an immediate appeal has the potential of saving the parties and the court substantial time and resources.

Section 1292(b) of Title 28 provides in part that "when a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing ...." The court of appeals may thereupon in its discretion permit an appeal from such order. *Id. See also* Fed.R.Civ.P. 54(b). According to one leading commentator, the factors in Section 1292(b) "should be viewed together as the

10

statutory equivalent of a direction to consider the probable gains and losses of immediate appeal." Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3930.

There is a strong policy opposing piecemeal litigation and the delay and disruption associated with it. *See e.g., Conrad v. Phone Directories Co., Inc.*, 585 F.3d 1376, 1382 (10th Cir. 2009) ("there is a long-established policy preference in the federal courts disfavoring piecemeal appeals."). Under Section 1292(b), that policy may be overcome where an immediate appeal would materially advance the ultimate termination of the litigation. In the court's view, however, an appeal at this point would not accomplish that result. A ruling favorable to Illinois Union on appeal of the clean-up cost issue would resolve one issue but would likely create one or more resulting factual issues springing from that finding. It would be unlikely to end the litigation. It would leave unresolved substantial allocation questions between clean-up and non-cleanup costs that would still have to be determined at trial, together with outstanding factual issues concerning the amount of property damage loss attributable to the release. As for the written demand requirement of the Illinois Union policy, plaintiff accurately points out that even if a court were to find the class action lawsuits do not satisfy this requirement, plaintiff cited evidence that other written claims were made against it in the course of its settlement program with persons and businesses claiming damage from the release. In short, the court is not persuaded that an immediate appeal of the court's Memorandum and Order would materially advance the ultimate termination of this litigation. Accordingly, the court will decline to certify the order for immediate appeal.

IV. *Conclusion*.

Plaintiff Coffeyville Resources' Motion to Clarify and/or for Reconsideration (Doc. 300) is GRANTED IN PART. The court determines that Liberty Surplus payments heretofore made have exhausted the National Union $5 million SIR and the National Union coverage will commence with the first dollar of additional National Union-covered losses for which Illinois Union does not provide coverage.

Defendant National Union's Motion for Reconsideration (Doc. 303) is DENIED.

Defendant Illinois Union's Motion to Certify Order for Immediate Appeal Pursuant to 28 U.S.C. § 1292(b) is DENIED.

IT IS SO ORDERED this   25th   Day of October, 2010, at Wichita, Ks.

        s/Wesley E. Brown
        Wesley E. Brown
        U.S. Senior District Judge