### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF KANSAS

```
COFFEYVILLE RESOURCES REFINING &   )
MARKETING, LLC,                    )
                                   )
                                   )         CIVIL ACTION
Plaintiff,                         )
                                   )      No. 08-1204-MLB-KMH
v.                                 )
                                   )
LIBERTY SURPLUS INSURANCE          )
CORPORATION, ET AL.,               )
                                   )
                                   )
Defendants.                        )
```

### MEMORANDUM AND ORDER

This matter is before the court on numerous motions in limine. All of the parties seek to prohibit the admission of certain evidence at trial. To the extent it can with the information before it, the court will briefly rule on each motion. The court cautions the parties, however, that nothing in this order will preclude the admissibility of the excluded evidence if it otherwise becomes relevant at trial. See Turley v. State Farm Mut. Ins. Co., 944 F.2d 669, 673 (10th Cir. 1991) ("The better practice would seem to be that evidence of this nature … should await development of the trial itself."). By the same token, nothing said herein constitutes a final ruling admitting evidence to which a valid objection is made at trial.

1

**PLAINTIFF'S MOTION IN LIMINE (Doc. 370).**

**Plaintiff's motion to preclude insurer attacks upon damages as unreasonable or excessive and defendants' responses.**

Plaintiff contends defendants should be precluded from attempting to attack or reduce plaintiff's flood damage settlements as unreasonable, unnecessary or excessive. Doc. 371. It argues both insurers denied coverage for the claims and are therefore bound by plaintiff's settlements. Citing inter alia Waugh v. American Cas. Co., 190 Kan. 725, 733 (1963). Both insurers sent reservation-of-rights letters, but plaintiff argues the letters were invalid because defendants effectively denied coverage and never tendered a defense or made payment and therefore are now bound by the settlements unless defendants can show the settlements were tainted by collusion or bad faith. Plaintiff further argues defendants waived any right to object to the settlements by failing to timely raise objections as the claims were settled.

Plaintiff additionally contends Illinois Union ("Illinois") is precluded from challenging the settlements because it breached a duty to defend plaintiff at least of September 23, 2008, when Liberty Surplus tendered the final $15 million of its policy limits and exhausted its primary coverage.

Illinois seeks to have plaintiff's motion stricken as an untimely dispositive motion and because it exceeds the allowable page limit. (Docs. 407, 408). Alternatively, it asks for an

2

extension of time to respond after the completion of discovery on waiver and estoppel issues.

As for the merits of plaintiff's arguments, Illinois contends General Condition E of the Illinois policy precluded any duty to defend plaintiff. (Doc. 408 at 4). It further says it never denied coverage for indemnity because it sent a reservation-of-rights letter at the outset of plaintiff's claim, and plaintiff's motion is therefore based on a faulty premise. Even if it had a duty to defend, Illinois says the obligation arose no earlier than September 2008.

Illinois further says plaintiff did not disclose the majority of its cost allocations until October 2011, and thus Illinois should be allowed its day in court to challenge those allocations. Illinois contends a failure to defend on its part cannot prevent it from challenging settlements because waiver and estoppel cannot create or expand coverage.

National's position is similar to Illinois. It too argues plaintiff is improperly seeking summary judgment and a ruling should be postponed until after completion of all discovery. (Doc. 406 at 2).

Turning to the merits, National contends it is not bound by the settlements entered into by plaintiff. National points out it could not have breached a duty to defend plaintiff because this court previously determined National has no duty to defend under

3

the terms of the National policy. It also contends a denial of coverage cannot expand the scope of coverage available to plaintiff and does not prevent National from challenging the reasonableness of the settlements. Finally, it contends plaintiff is attempting to contradict the court's summary judgment ruling that there were questions of fact regarding covered versus uncovered damages.

As discussed below, the court reserves ruling on whether Illinois breached a duty to defend plaintiff as of September 23, 2008. But it rejects plaintiff's argument that Illinois and National are thereby precluded from challenging the reasonableness of plaintiff's settlements. Kansas and Illinois law both allow an insurance company which failed to defend to nevertheless challenge the reasonableness of settlements entered into by the insured. Plaintiff's motion in limine is therefore denied as to both Illinois and National.

Illinois' Duty to Defend; Breach.

A. Duty to defend. The Insuring Clause of the Illinois policy provided coverage to plaintiff in accordance with the terms of the followed (Liberty) policy "except as otherwise noted" and subject to the terms and conditions of the Illinois policy. The Liberty policy required Liberty to defend plaintiff on any claims potentially within the policy's coverage but Liberty's duty to defend ended upon exhaustion of the policy limits. Doc. 1-1 at 3. The Illinois policy, in turn, provided in the event of exhaustion

4

of the Liberty policy the Illinois policy would "drop down" and would "continue in force as primary insurance…." Doc. 86-6 at 3. The Illinois policy included the following condition: "Claim Participation: The Insurer shall have the right, but not the duty, and shall be given the opportunity to effectively associate with the Insureds in the investigation, settlement or defense of any Claim even if the Underlying Limit has not been exhausted." Doc. 1-2 at 4 (General Condition E).

One can certainly argue that the Illinois policy is ambiguous as to whether it promised a defense to plaintiff <u>after</u> exhaustion of the underlying Liberty policy. Plaintiff was expressly promised a defense in the Liberty policy and the Illinois policy generally followed form to that policy. In the event of exhaustion of the Liberty policy, the Illinois policy said it would drop down and continue in force as primary coverage. These provisions together could lead a reasonable insured to understand that Illinois was obligated to provide a defense once the Liberty policy was exhausted.

Against this background, General Condition E arguably fails to make clear any contrary intent. The awkward punctuation and phrasing of Condition E makes it unclear what duty Illinois was even talking about. The language seems to suggest the provision was merely granting Illinois a right, but not a duty, to participate in the claims process and defense while Liberty was still in charge of

5

the defense, and it thus granted "the right, but not the duty, … <u>to</u> <u>effectively associate with the Insureds</u>" in the investigation and defense "even if" the Liberty policy has not been exhausted.

As far as the duty to defend is concerned, one reasonable construction may be that Illinois was undertaking no duty to defend <u>before</u> the Liberty policy was exhausted, while leaving intact Illinois' duty to defend after exhaustion. <u>See</u> <u>American Family Mut.</u> <u>Ins. Co. v. Wilkins</u>, 285 Kan. 1054, 1058-59, 179 P.2d 1104 (2008) ("Because the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage under the policy, it must use clear and unambiguous language; otherwise, the policy will be liberally construed in favor of the insured.").

Judge Brown previously determined the Liberty policy was exhausted once Liberty paid in its policy limits. <u>See</u> Doc. 299 at 17, 86. At that point – by September 23, 2008 – Illinois was arguably required to step in and defend plaintiff on claims potentially within the policy coverage. <u>See</u> 14 <u>Couch on Insurance</u> § 200:38 (3rd Ed. 2011) (excess insurer not obligated to defend "until all primary insurance is exhausted or the primary insurer has tendered its policy limits"). Despite that obligation, Illinois <u>apparently</u> undertook no defense of plaintiff and took no active part in subsequent settlement of claims. However, a definitive ruling on that issue is not necessary at this time because: (1) of

6

the rulings below regarding defendants' rights to challenge the settlements and (2) it is not appropriate for a motion in limine, which is intended to resolve evidentiary, not legal, issues. If necessary, the matter of Illinois' breach, if any, can be taken up at a later date.

    B. <u>Consequences of Breach</u>.

    Plaintiff argues that Illinois is precluded as a matter of law from contesting the reasonableness or necessity of plaintiff's settlements. In support, plaintiff cites authority including the <u>Waugh</u> case and this court's July 19, 2012 Memorandum and Order. It is true this court remarked that an insurer which fails to defend "may be precluded" from challenging the reasonableness of settlements. (Doc. 358 at 4, 6)(citing <u>Waugh</u> and one other case). But that statement was dicta, added to a discussion of whether plaintiff could assert waiver and estoppel theories in the pretrial order. The court was not deciding whether Illinois had breached a duty to defend nor was it deciding the legal consequences of breaching that duty. Those issues were simply not before the court at that time and still aren't. To the extent the parties may have construed the court's statement to say that an insurer which fails to defend is barred from challenging the reasonableness of the insured's settlements (and the court apologizes for not being more clear), that construction is not supported by Kansas or Illinois law.

_Waugh_ found an insured has a cause of action against its insurer when it refuses coverage and the insured is forced to settle claims within the policy's coverage. _Waugh_, 190 Kan. at 177. The court said the insurer in such circumstances "is bound by any _reasonable_ compromise or settlement made by the insured." (emphasis added). _Waugh_ cited for support a Texas case involving an insurer's failure to defend, in which the court rejected the insurer's challenge to an underlying settlement. The insurer unsuccessfully argued there was "an absence of proof" the settlement was reasonable and necessary. (_citing_ _Southwestern Fire & Cas. Co. v. Bendel_, 321 S.W.2d 183, Headnote 3, (Tex.Civ.App. 1959)).

But _Waugh_ did not hold an insurer's failure to defend bars it from presenting evidence to challenge the reasonableness of the insured's settlement. _See also_ _United Wats, Inc. v. Cincinnati Ins. Co._, 971 F.Supp. 1375, 1386 (D. Kan. 1997) (noting _Waugh_ held insurer is bound by a reasonable settlement). Nor does any other Kansas case cited by plaintiff adopt such a rule. As National points out, Kansas cases have applied the general rule that an insurer's denial of coverage or failure to defend means the insured is free to settle directly with third parties, but the insurance company is bound by a resulting settlement only if it is reasonable and made in good faith. _See_ _e.g._, _Glenn v. Fleming_, 247 Kan. 296, 318, 799 P.2d 79 (1990) (endorsing rule that settlement may be enforced against the insurer "only if it is reasonable in amount

8

and entered into in good faith."); Associated  Wholesale Grocers, Inc. v. Americold Corp., 261 Kan. 806, 833, 934 P.2d 65 (1997) (insurer's lack of consent did not preclude enforcement of the settlement "if the amount is reasonable"); Murphy v. Silver Creek Oil & Gas, Inc., 17 Kan.App.2d 213, 837 P.2d 1319 (1992) (insurer's unjustified refusal to defend "does not obligate the insurer to pay the amount of an unreasonable settlement or a settlement made in bad faith."); Aks v. Southgate Trust Co., 1994 WL 171537 (D. Kan., Mar. 31, 1994) ("An insurer's denial of coverage may be deemed to permit the insured to settle with third parties, and the insurer is bound by the settlement so long as it is reasonable in amount and made in good faith.").

Glenn adopted the following procedural framework for determining whether a settlement is reasonable. First, the insured has the burden of coming forward with evidence of the settlement's reasonableness. This is so because the insured has knowledge of the operative facts surrounding the settlement. Glenn, 247 Kan. at 318. At a minimum, it must come forward with enough information for the district court to make an independent evaluation of the reasonableness of the settlement. See Associated Wholesale Grocers, 261 Kan. at 841. Once the insured makes this showing, the insurer bears the ultimate burden of persuasion to show the settlement was not reasonable or was not made in good faith. See Glenn, 247 Kan. at 318-19 (quoting Griggs v. Bertram, 88 N.J. 347, 368, 443 A.2d

9

163 (1982)). The determination of reasonableness is not to be a trial on the merits of the underlying litigation. Expert testimony summarizing and evaluating the strengths and weaknesses of the parties' positions may well be appropriate. <u>Associated Wholesale Grocers</u>, 261 Kan. at 841.[1]

This approach is consistent with the general rule in leading treatises. Thus, where an insurer fails to defend "the insurer will be liable for any reasonable settlement." 2 Allan D. Windt, <u>Insurance Claims & Disputes</u> (5th) §6:29. The insurer "can deny liability only to the extent that the settlement was excessive in light of the facts known or reasonably available to the insured at the time of the settlement," with the burden generally on the insurer to prove the settlement amount was unreasonable. Moreover, "if the insured paid the settlement with its own money, the settlement amount should be presumed to be reasonable." <u>See also</u> 46 C.J.S. <u>Insurance</u> §1661 ("The amount paid in such settlement may be recovered from the insurance company, at least to the extent that it is made in good faith and is reasonable…."); 44 Am.Jur.2d <u>Insurance</u> §1385 ("Such a settlement will be enforced against the insurer, therefore, only if it is reasonable in amount and entered

---

[1] The factors for evaluating reasonableness include: "'[T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released.' " <u>Associated Wholesale Grocers</u>, 261 Kan. at 841 (citation omitted).

into in good faith, and while the initial burden of proving these elements is on the insured, because of his or her control of the case and access to information, the ultimate burden of persuasion is on the insurer.").

This same approach is consistent with Illinois law. See Guillen ex rel. Guillen v. Potomac Ins. Co. of Illinois, 203 Ill.2d 141, 163, 271 Ill.Dec. 350, 785 N.E.2d 1 (2003) ("As a majority of cases have recognized, the risk of collusion and fraud can be lessened … by placing a requirement upon the plaintiff to prove that the settlement it reached with the insured was reasonable before that settlement can have any binding effect upon the insurer"; insurer retains the right to rebut any preliminary showing of reasonableness with its own evidence); Universal Underwriters Ins. Co. v. LKQ Smart Pants, Inc., 2011 Ill.App.(1st) 101723, 963 N.E.2d 930, 948-49, 357 Ill. Dec. 532 (2011) (remanding for determination of reasonableness of settlement).

Finally, the same general rule applies when an insurer contends it is not liable for a portion of a settlement which resulted from non-covered claims. See Kansas Health Care Stabilization Fund. V. St. Francis Hosp., 41 Kan.App.2d 488, 203 P.3d 33 (2009)(citing 1 Windt, Insurance Claims and Disputes § 6:31); R.D. Hursh, Refusal of Liability Insurer to Defend Action Against Insured Involving Both Claims Within Coverage of Policy and Claims Not Covered, 41 A.L.R.2d 434, §3[c] (1955) (insurer who

fails to defend is liable for so much of compromise settlement as is allocable to claims covered by the policy and for insured's expenses in negotiating the settlement). Whether settlements were actually for covered claims depends on "how the parties to the settlement viewed the relative merits of the plaintiff's claims at the time of settlement…." Aselco, 41 Kan.App.2d at 504 (quoting 1 Windt, Insurance Claims and Disputes §6:31, pp. 6-244 to 6-250 (5th ed. 2007)).

A breach of the duty to defend may render the insurer liable for the insured's resulting damages, including defense and settlement costs. See Miller v. Westport Ins. Corp., 288 Kan. 27, 38, 200 P.3d 419 (2009); K.S.A. §40-256. See also K.S.A. 16-201. It may estop the insurer from invoking policy defenses such as an insured's failure to cooperate or a failure to obtain the insurer's approval for settlement. See e.g., Traders & General Ins. Co. v. Rudco Oil & Gas Co., 129 F.2d 621, 626 (10th Cir. 1942). But it does not make the insurer liable for an unreasonable settlement or one for claims outside the policy coverage. This rule follows from the principle that waiver and estoppel cannot be used to expand the coverage of an insurance policy. See Doc. 358 at 3. See also Aselco, Inc. v. Hartford Ins. Group 28 Kan.App.2d 839, 851-852, 21 P.3d 1011, 1020 (Kan.App. 2001)("Like Judge Lungstrum, we believe the cases decided to this point mean our Kansas Supreme Court would not adopt a bright line rule that insurers who fail to provide a

defense and reserve their rights are inevitably equitably estopped from raising their coverage defenses. We are persuaded that an insured in [plaintiff's] position should not automatically reap coverage without limits. [Defendant] is therefore free to argue in the district court that, despite the breach of its duty to defend and its failure to reserve rights, [the insured] did not contract for coverage for this loss."). Cf. Patrons Mut. Ins. Ass'n. v. Harmon, 240 Kan. 707, 711, 732 P.2d 741 (1987) (where underlying action proceeded to judgment, principles of collateral estoppel may preclude insurer from relitigating facts determined in prior action).

Accordingly, plaintiff's motion in limine to preclude defendants from challenging the reasonableness of settlements will be denied.

**ILLINOIS' MOTION IN LIMINE** (Docs. 372, 373).

A. Any mention of or evidence relating to the settlement between Liberty and plaintiff, and the allocation of Liberty's settlement payment among coverage categories. Illinois argues the allocation of payments agreed to between Liberty and plaintiff as part of their settlement is not necessarily correct and should be decided by the jury. It contends the Liberty settlement allocation is irrelevant and says plaintiff must prove the proper allocation at trial. (Doc. 373 at 3). Illinois says the correct allocation matters because its policy is implicated only if Liberty paid $15

13

million for covered property damages. Illinois also asserts that the Liberty settlement is inadmissible under Fed.R.Evid. 408.

Plaintiff opposes the motion, arguing evidence of the Liberty settlement will cause no prejudice. It proposes to have the jury determine recoverable amounts of damage in each of plaintiff's identified cost categories, followed by a separate proceeding where the court determines which insurer must pay each category. (Doc. 403 at 2).

National, for its part, makes numerous arguments against any attempt by Illinois to "undo" the Liberty settlement allocations. Among other things, it argues Illinois is trying to nullify the court's prior summary judgment ruling, which found the Liberty policy was exhausted by its 2008 payment of $15 million for covered property damage claims. Doc. 405.

Illinois' motion will be taken under advisement. At this point it is not clear to the court that the parties have thought through how the evidence regarding damages will be presented. Plaintiff's cost categories, which appear to be the only practical method of tracking the claims and payments stemming from the flood, are themselves tied to the policy provisions of the insurance policies. Plaintiff clearly developed the categories in conjunction with Liberty as the primary insurer on the claims. If defendants intend to challenge the reasonableness of plaintiff's settlements, the jury will have to consider all of the circumstances for plaintiff's

14

actions, including its explanation for developing the cost categories and its allocations of payments under those categories. And as National points out, plaintiff is now seeking recovery only for its unreimbursed losses, meaning the Liberty settlement payment allocations must be taken into account. Illinois has not shown that evidence of plaintiff's settlement and allocation of Liberty payments is irrelevant.

Moreover, the court doubts that evidence of the Liberty settlement is the type which Rule 408 excludes. Illinois cites no case which applies Rule 408 to the facts of this case. If Illinois wants to pursue a Rule 408 argument, it must clarify its position and cite relevant case authority.

The court notes Illinois argued on summary judgment that its policy was not triggered because plaintiff failed to prove it had more than $15 million in non-clean-up costs covered by the Liberty policy. Doc. 299 at 17. Judge Brown rejected that argument, finding plaintiff's summary judgment evidence was uncontroverted and sufficient to show "that the Liberty policy – including its $10 million sublimit [for clean-up costs] and $25 million aggregate limit – has in fact been exhausted." Doc. 299 at 85. This ruling precludes Illinois from now claiming or attempting to show at trial that the Liberty policy was not actually exhausted by payment of $15 million in covered property damage claims.

15

B. Any opinion, interpretation or construction of insurance policy language by anyone, including both expert and fact witnesses, particularly regarding but not limited to the question of what constitutes "property damage," "clean-up costs," "flood damage," or a "claim." Illinois argues the policy language is unambiguous and is therefore a question of law for the court.

This motion will be denied. The court recognizes its duty to construe the terms of the insurance policies and, depending on the evidence, the court will instruct the jury regarding the applicable policy terms it must consider. But defendants' challenge to the reasonableness of plaintiff's settlements means plaintiff will be entitled to fully explain its understanding of the liabilities it was facing and the reasons for its settlements. The court cannot say at this point what testimony about the insurance policies will be helpful to the jury and will be relevant to the reasonableness inquiry.

C. Any mention of, or evidence relating to, the fact that the parties filed motions for summary judgment and the disposition of those motions. This motion will be denied. The court will determine at trial whether any reference to the summary judgment motions or rulings is appropriate. The court notes the rulings could possibly be relevant to the reasonableness of settlements made by plaintiff after the summary judgment order. Plaintiff may be entitled to show

16

reasonableness of such settlements by relying on standards of liability decided by Judge Brown in his summary judgment order.

D. Any references to the effect of the jurors' answers to any question submitted. The court agrees with plaintiff this motion is vague. The specific questions for the jury have not been determined and the court cannot decide in the abstract what or how much explanation the jury should be given regarding the effect of answers to questions.

E. Any reference to this motion and supporting memorandum; that the motion has been presented to the court for ruling, and granted or denied in whole or in part; that Illinois has sought to exclude from proof any matter bearing on the issues in this case or the rights of the parties to the suit; or that the court has excluded proof of any particular matter.

The motion is granted in part. Any testimony specifically referencing the motions in limine is likely irrelevant and will be excluded. Any counsel seeking to invoke references to the motions in limine should first seek a ruling from the court outside the presence of the jury.


**NATIONAL MOTIONS IN LIMINE** (Docs.375-85).

A. Evidence regarding National's financial condition. (Doc. 375). This motion is granted absent a prior showing that any such evidence is relevant to any issue to be decided by the jury.

17

B. <u>Testimony regarding any defense obligation or claims adjustment costs owed by National</u>. (Doc. 376). This motion is likewise granted in view of the court's prior determination that National owes no duty to defend.

C. <u>Testimony regarding National's alleged obligation to pay fines or penalties incurred by plaintiff</u>. (Doc. 377). The court will rule on this issue if, as and when the matter is raised at trial.

D. <u>Motion to bar plaintiff from seeking to recover costs previously allocated pursuant to the Liberty settlement</u>. (Doc. 378). The court will reserve ruling on this issue until it determines how allocation issues will be determined.

E. <u>Motion to bar plaintiff from referring to National in a perjorative or disparaging manner</u>. (Doc. 379). The court has no idea what National is talking about.

F. <u>Motion to preclude issuance of press releases or media statements</u>. (Doc. 380). The motion is denied. National makes no effort to show such an order comports with the First Amendment. That having been said, the court cannot imagine why any party would perceive any reason to exercise its First Amendment right to alert the media about the case. Or, for that matter, why the media would be interested.

G. <u>Any reference to National Union as "AIG" or "Chartis"</u>. (Doc. 381). National states it is a member company of what was once

known as AIG and is now known as Chartis, Inc. But it says it is a
"separate insurance company which individually and independently
issued a policy to" plaintiff, and it argues any references to AIG
or Chartis would be factually incorrect and would mislead and
confuse the jury. Plaintiff responds that some of defendant's
adjusters were identified only as AIG employees. Doc. 404 at 3. The
court will deny the motion at this time with the admonition that
any unnecessary references to AIG or Chartis should be avoided so
as to avoid confusion. Evidence of the relationship between these
companies may be relevant if it is necessary to clarify that a
particular witness or document is attributable to National.

H. <u>Any evidence sought but denied to National during discovery</u>
(Doc. 382). The motion identifies no such evidence. The motion is
therefore denied, subject to reconsideration if National shows that
some specific item of evidence a party seeks to introduce is
inadmissible under the Rules of Evidence.

I. <u>Any witness testimony about topics which they were
instructed not to answer in their depositions</u>. (Doc. 383). This
motion is denied as vague. The motion cites no specific item of
evidence that another party is likely to introduce.

J. <u>Any evidence regarding plaintiff's alleged acts of good
citizenship</u>. (Doc. 384). National objects to the relevancy and
prejudice from any suggestion that plaintiff's response to the oil
release "was heroic and/or that [plaintiff] was a good corporate

19

citizen." This motion will be denied given that a central issue for trial appears to be whether plaintiff's settlements were reasonable in view of the liability it was facing. (Of course, if plaintiff is foolish enough to declare itself "heroic" to the jury it may suffer its own prejudice.) But the reasonableness inquiry may require an examination of the totality of the circumstances surrounding plaintiff's actions.

K. <u>Motion to preclude evidence or argument regarding waiver or estoppel and breach of contract claims, or, in the alternative, motion to disqualify Lee Smithyman as trial counsel</u>. (Doc. 385). The court has not made a final ruling on the waiver and estoppel issues.

As to Mr. Smithyman, the court will need to know, at a minimum, whether plaintiff intends to call Mr. Smithyman at the jury trial and, if so, the precise nature of his anticipated testimony. Similarly, defendants must specifically explain their need, if any, to call Mr. Smithyman in their cases and state, in detail, the evidence they believe only he can provide. It goes without saying that the court will look with disfavor on any attempt to disqualify Mr. Smithyman as a matter of trial strategy.

**CONCLUSION**.

The parties' motions in limine (Docs. 370, 372, 375-85, 407) are GRANTED IN PART, DENIED IN PART, or taken under advisement, as set forth in this order.

20

National's motion to conduct limited discovery (Doc. 361) has been previously GRANTED.

IT IS SO ORDERED.

Dated this 17th day of September, 2012, at Wichita, Kansas.

s/Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE